UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BRIAN HATCH,                                    *
                                                *
            Petitioner,                         *
                                                *
                  v.                            *       Civil Action No. 1:20-cv-12072-IT
                                                *
UNITED STATES DEPARTMENT OF                     *
LABOR,                                          *
                                                *
            Respondent.                         *

MEMORANDUM & ORDER

August 25, 2021

TALWANI, D.J.

Pending before the court is Petitioner Brian Hatch's Petition for Relief from

Disqualification Under the Labor-Management Reporting and Disclosure Act [#1]. For the

following reasons, the petition is ALLOWED.

### I.      Standard

Section 504(a) of the Labor-Management Reporting and Disclosure Act of 1959

("LMRDA") prohibits individuals convicted of certain crimes, including "violation of narcotics

laws," from serving "as an officer, director, trustee, member of any executive board or similar

governing body, business agent, manager, organizer, employee, or representative in any capacity

of any labor organization" for at least thirteen years after conviction of the crime or the end of

the term of imprisonment, whichever is later. 29 U.S.C. § 504(a).

The restriction is not absolute. First, the restriction will end earlier upon a full post-

conviction restoration of citizenship rights affords relief from this disability. Id. § 504(a)(A). The

rights of citizenship that must be restored for the restriction to be removed on this ground are:

"(i) the right to vote; (ii) the right to hold elective office; and (iii) the right to sit on a jury."

McGrath v. United States, 60 F.3d 1005, 1007 (2d Cir. 1995) (citation omitted).

Second, a district court may grant an exemption from the thirteen-year bar if the court determines that the individual's service in the union "would not be contrary to the purposes of" the LMRDA. 29 U.S.C. § 504(a). Those purposes include ensuring that "labor organizations, employers, and their officials adhere to the highest standards of responsibility and ethical conduct in administering the affairs of their organizations," id. § 401(a), and preventing abuses by "representatives of a labor organization [who] occupy positions of trust," id. § 501(a). In deciding whether to grant an exemption on this ground, the court is instructed to consider the Sentencing Guidelines and the policy statements expressed in 28 U.S.C. § 994(a). The relevant policy statement provides that:

> relief shall not be given to aid rehabilitation, but may be granted only following a clear demonstration by the convicted person that he or she has been rehabilitated since commission of the disqualifying crime and can therefore be trusted not to endanger the organization in the position for which he or she seeks relief from disability.

U.S.S.G. § 5J1.1 (2021). Accordingly, the burden is on the petitioner to clearly demonstrate rehabilitation warranting an exemption.[1]

## II.    Discussion

A.    *Petitioner is a Barred from Holding Union Office Until December 2025 Absent Relief*

On July 20, 2009, Hatch pleaded guilty to a felony offense for trafficking of a controlled substance and a misdemeanor drug conspiracy offense. Ex. A—Essex Superior Court Docket 3

---

[1] The sentencing court, on the motion of the person convicted, may also set a lesser period of at least three years after the later of the conviction date or the end of imprisonment. 29 U.S.C. § 504(a). That provision is not at issue here.

[#11-1]. The crimes of conviction were "violation[s] of narcotics laws," so the LMRDA restrictions apply.

Hatch was sentenced to probation for the misdemeanor and a prison term for the felony, Ex. C—Petitioner CORI 4 [#11-1], and accordingly, the later and therefore relevant period is based on the prison term. Hatch was released from prison on parole on April 8, 2013, and he completed parole on December 6, 2018. Ex. A—Essex Superior Court Docket 6 [#11-1]; Ex. B—First Interview of Petitioner 4 [#11-1]. The "period of parole shall not be considered as part of a period of imprisonment," 29 U.S.C. § 504(c), and the relevant disqualification period therefore began on April 8, 2013.

Under Massachusetts law, Hatch's rights to vote and to hold public office were restored upon his release from imprisonment. MASS. CONST. amend. art. III; Mass. Gen. Laws ch. 279, § 30. His right to sit on a jury will be restored seven years after his discharge from parole and the successful completion of his sentence. Mass. Gen. Laws ch. 234A, § 4(7). Accordingly, absent relief, Hatch is barred from holding a position of authority in a labor union until seven years after discharge from parole, or December 6, 2025.

B.      *The Position Petitioner Seeks to Hold is Covered by the LMRDA Restriction*

Hatch, who is now an employee of Global Companies, LLC ("Global Companies"), seeks to represent his workplace as an elected union steward. Petition ¶ 1 [#1]. As such, Hatch would serve as a "representative" of the union, and accordingly, the position is covered by the LMRDA restriction.

The court notes, however, that under the collective bargaining agreement ("CBA") between Global Companies and Teamsters Local 25, the authority of stewards is limited. Stewards are permitted to investigate and present grievances to Global Companies, in accordance with the CBA (and time engaged in this function is paid by Global Companies as part of the

stewards' working hours). Ex. H—CBA between Teamsters Local 25 and Global Companies 4-5 [#11-1]. Stewards are permitted to transmit messages and information from the union or its officers, but only where such messages and information have (1) been reduced to writing by the union, or (2) if not reduced to writing, are of a routine nature and do not involve any interference with Global Companies' business. Id. at 5. The steward also has no authority to take any action interrupting Global Companies' business except as authorized by official action of the union. Id. Finally, the steward may collect dues when authorized "by appropriate Local Union action," but in the normal course, Global Companies deducts union dues directly from employees' pay through dues checkoff and remits the funds directly to the union. Id. at 4; see also CBA, Article XV [#21].

     C.    *Petitioner Has Demonstrated that He is Rehabilitated*

The court concludes that Hatch has made the necessary showing of rehabilitation.

     1.    <u>Prior to and during Incarceration</u>

Prior to and during his incarceration, Hatch demonstrated remorse for his actions and undertook numerous rehabilitative activities. See Letters of Support and Certificates [#1-4]. A counselor who witnessed Hatch telling his own children what he had done and the consequences he faced described Hatch "as a man who understands the nature of his crime and [who] is eager and willing to pursue counseling in order to better his life so he can provide an honest, healthy environment for his family." Letter from Lawrence D. Robinson 2 [#1-4]. A lieutenant in the Malden Fire Department and childhood friend recounted the many letters he received from Hatch while he was incarcerated, which expressed "deep remorse and regret for committing the acts which have caused his incarceration," and "repeatedly and unequivocally" stated that he "will never again engage in any behavior which will jeopardize his ability to rejoin society as a productive, law-abiding citizen and jeopardize his ability to rejoin his family at home." Letter

from James M. Mahoney 3 [#1-4]. Another childhood friend and longtime state employee described watching Hatch "do a searching and fearless moral inventory on himself" while incarcerated. Letter from Stephen Moro 4 [#1-4].

The investigation conducted by the Department of Labor ("DOL") found that Hatch had "undertaken a number of efforts to change his life for the better. While incarcerated, he participated in and/or achieved certificates in drug and alcohol education, treatment, and recovery programs; tutored other inmates; and reflected on his actions and their toll on his family and community." DOL Answer 6 [#11]. Hatch accepted responsibility for his offense, acknowledging "his culpability in this 'reckless immature period of his life' and the consequences of aligning with the 'wrong crowd.'" Id. (quoting Ex. B—First Interview of Petitioner 4 [#11-1]).

2.    Following his Release

Hatch completed his probation and parole without incident and has maintained a spotless post-release record. Ex. C—Petitioner CORI 1-4 [#11-1].

Upon his release, Hatch "recommitted himself to his work and to his wife and four children." DOL Answer 6 [#11]. He has maintained employment and has become actively involved with his union and his community. Hatch Statement [#1-5]; see also DOL Answer 6 [#11]. He has held his present employment with Global Companies since June 2014, currently working approximately 70 hours per week. DOL Answer 5 [#11]. He has served as an active member of Teamsters Local 25, regularly attending union meetings and volunteering for fundraising and community service events. Id. at 6-7. He has also pursued professional credentials and eligibility to coach sports. Id. at 7.

Hatch's references supporting his request reportedly included: a retired probation officer, who "attested to [Hatch]'s remorse"; a longtime administrator, coach and teacher who described Hatch as "highly unlikely to put himself and his family in that situation again"; and the Malden Chief of Police, who was present on the day of Hatch's arrest, who stated that Hatch "has lived a life of good citizenship since his release." Reply [#19].[2]

The DOL's own investigation found that Hatch's "character references remarked on his leadership qualities and strong interpersonal skills, including with coworkers" and that "union officials interviewed by the Department were also supportive of [Hatch]'s exemption request, and felt he would be a valuable asset to the union, despite his criminal past." DOL Answer 7 [#11]. The individuals interviewed by the DOL included the President of Teamsters Local 25, who has known Hatch since they were captains of competing high school football teams, Ex. E—Report of Sean O'Brien Interview 28-32 [#11-1]; the Business Agent of Teamsters Local 25, who met Hatch following his release, Ex. G—Report of Thomas G. Mari Interview 40-44 [#11-1]; and at least some of the individuals who provided letters of support, including the coach of Hatch's high school football team. Ex. I— Report of Paul Finn Interview 51-54 [#11-1].

The DOL discounted these letters and references. See Shanker Decl. ¶ 27 [#11-2] ("*However*, many of these individuals had close personal relationships with Hatch and have known him and/or his family—including his grandfather, a well-respected football player and police officer—since Hatch's childhood") (emphasis added). While some of Hatch's references described their early relationships with Hatch, the material provided to the court shows that the relationships continued to the present. Where the DOL has pointed to no substantive

---

[2] Neither Hatch nor the DOL submitted copies of the reference letters provided by Hatch to the DOL, but the DOL has lodged no disagreement with Hatch's report on these letters.

disagreement with the information provided by any of these references, the court finds their reports to be well-informed and therefore compelling. The implication that Hatch's references may have spoken favorably about Hatch because of a relationship with his grandfather or other family members also appears to misconstrue their statements. The Report of Interview of Paul Finn, for example, does reference Hatch's grandfather, but only to report that Finn felt that the grandfather's reputation "was another reason why Hatch felt remorse over the things he committed in the past; his actions tarnished his family name." Ex. I—Report of Paul Finn Interview 53 [#11-1].

In sum, since his release more than eight years ago, Hatch appears to have dedicated himself to his family, his work, and his community in ways that sufficiently demonstrate his rehabilitation.

> 3.    The Department of Labor's Evidence

The DOL argues that Hatch's petition should not be granted because Hatch "has not entirely distanced himself from the criminal community since committing the disqualifying offense." DOL Answer 7 [#11]. Specifically, the DOL points to "periodic" communications that Hatch has with Eric Rogers, who the DOL contends "played an integral role in the drug trafficking enterprise in which Hatch operated and for which he was convicted, and with Ralph DeLeo, an individual incarcerated for racketeering conspiracy. Id. at 7-8.[3] The DOL's Answer [#11] does not suggests anything untoward about the content of the post-conviction communications. Instead, the DOL argues that the mere existence of such communications "reveal[s] [Hatch's] vulnerability to corrupting influences." Id. at 19.

---

[3] Hatch disputes the DOL's claims regarding the past criminal activity. See Reply 13, n.2 [#19]. The court need not resolve this dispute regarding Hatch's preconviction involvement with Rogers.

Notably, the DOL offers no evidence that either Rogers or DeLeo is currently engaged in criminal activity. DeLeo remains incarcerated. Id. at 8. On November 4, 2017, after eighteen months of supervision following Rogers' release from custody, Rogers moved to terminate the supervision, reporting that he had had no problems or interactions with police during this period, had been employed by the same company since his release, and had abided by all conditions of supervised release. Mot. to Terminate Supervised Release, Ex. K—Rogers Court Documents 65-66 [#11-2]. Two days later, Judge Young granted the motion. Electronic Order, United States v. Rogers, No. 11-cr-10420 (D. Mass. Nov. 6, 2017) ECF 37. The DOL offers no suggestion that Rogers has since engaged in criminal activity.

The court finds the DOL's position both remarkable and troubling. Rehabilitation of individuals with criminal convictions will never occur if law-abiding citizens may not communicate with them. Here, Hatch's own rehabilitation and successful reentry were made possible because of the support of other, law-abiding members of his community. That Hatch, in turn, has sent encouraging words to an elderly inmate and exchanged pleasantries with another law-abiding citizen with a prior felony conviction shows no "vulnerability to corrupting influences."

## III.   Conclusion

In sum, the court finds that granting Hatch an exemption would not be inconsistent with the purposes of the LMRDA. Hatch has demonstrated his full rehabilitation following his drug trafficking conviction and has shown that he "can therefore be trusted not to endanger the organization" while serving as a union steward. His election as a union steward would therefore in no way frustrate the LMRDA's goal of reducing corruption in organized labor.

For the foregoing reasons, the court GRANTS Hatch's <u>Petition</u> [#1] for an exemption from the statutory disqualification under 29 U.S.C. § 504(a) from serving as an elected union official.

IT IS SO ORDERED.

August 25, 2021                                                    /s/ Indira Talwani
                                                                  United States District Judge